UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NORTH SHORE CO-OWNERS' ASSOCIATION, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 1:18-cv-03632-JPH-TAB ) |
| NATIONWIDE MUTUAL INSURANCE COMPANY, | ) ) **JURY DEMAND** ) |
| Defendant. | ) ) |

## AMENDED COMPLAINT

Comes now Plaintiff North Shore Co-Owners' Association, Inc. ("North Shore"), by counsel, and for its Amended Complaint against Nationwide Mutual Insurance Company ("Nationwide") says:

### COMMON ALLEGATIONS

1. North Shore Co-Owners' Association, Inc. is incorporated under the laws of the state of Indiana with its principal place of business in Marion County, Indiana.

2. Nationwide is an Ohio company with its principal place of business in Ohio.

3. The amount in controversy exceeds $75,000, exclusive of interest and costs.

### COUNT I: BREACH OF CONTRACT

4. Defendant insured Plaintiff's buildings under policy number ACP BPHM5802357115 (hereinafter the "Policy")

5. The Policy had effective dates of December 8, 2016, to December 8, 2017.

  6. A true and accurate copy of the Policy is incorporated by reference as Docket Number 42-1.

  7. The Policy provides coverage for direct physical loss of or damage to Covered Property unless the loss is excluded or limited under the Policy.

  8. Specifically the Policy states:

A. **COVERAGES**

We will pay for direct physical loss of or damage to Covered Property at the described premises in the Declarations caused by or resulting from any Covered Cause of Loss.

 1. **COVERED PROPERTY**

Covered Property includes Buildings as described under paragraph a. below, Business Personal Property as described under paragraph b. below, or both, depending on whether a Limit of Insurance is shown in the Declarations for that type of property. Regardless of whether coverage is shown in the Declarations for Buildings, Business Personal Property, or both, there is no coverage for property described under paragraph 2, PROPERTY NOT COVERED.

  a. **Buildings**, meaning the described buildings and structures at the described premises, including:

   (1) Completed additions;
   (2) Fixtures, including outdoor fixtures;
   (3) Permanently installed:
    (a) Machinery;
    (b) Equipment; and
    (c) Tanks, including pumps;

3. **COVERED CAUSES OF LOSS**

   This Coverage Form insures against direct physical loss unless the loss is:

   a. Excluded in Section B. EXCLUSIONS;
   b. Limited in paragraph A.4. LIMITATIONS in this section; or
   c. Limited or excluded in Section E. PROPERTY LOSS CONDITIONS or Section F. PROPERTY GENERAL CONDITIONS.

(Dkt. 42-1, p. 30-31).

9. During the policy period, Plaintiff sustained a covered loss or covered losses to its covered buildings.

10. Defendant failed to pay the full amount of the loss owed under the Policy.

11. Defendant never advised as to any limitation period in filing suit after Plaintiff reported the claim.

12. Defendant never advised as to any exclusions or limitations in the policy that they intended on enforcing.

13. Plaintiff complied with all terms and conditions of the Policy.

14. Nationwide breached the contract by failing to fully pay for all covered damage.

15. Nationwide also breached the contract by failing to promptly respond to communication from Plaintiff.

16. For example, on or about June 14, 2018, Matt Latham, Public Adjuster, provided the report of Sheilds Engineering Group. Said report identified shingle damage to the roofs and roofing appurtenances.

17. Nationwide was asked to consider this report and pay the claim.

18. Nationwide never timely responded to the report or its findings.

3

WHEREFORE, Plaintiff, North Shore Co-Owners' Association, Inc., prays for judgment against Defendant, Nationwide Mutual Insurance Company, in an amount which will fully, fairly and adequately compensates it for all damages recoverable under Indiana law for breach of contract including compensatory damages, and consequential damages, for costs of this action, for prejudgment interest, and for all other just and proper relief in the premises.

### COUNT II: BAD FAITH

19. Plaintiff reincorporates all prior allegations.

20. Nationwide wrongly denied open and obvious hail damage for the purpose of shortchanging the policyholder.

21. Nationwide proceeded with the claim by hiring Nederveld to "inspect" for hail damage.

22. Nederveld was a preferred vendor that Nationwide utilized to assist Nationwide in wrongly denying this claim in bad faith.

23. Nederveld was a preferred vendor that Nationwide utilized to assist Nationwide in misrepresenting the damage covered under this Policy.

24. Nationwide has conspired with Nederveld to deceive Plaintiff as to the scope of the hail damage and the Policy coverages.

25. For example, Nederveld provided a report stating that the roofs had no hail damage, even though Nationwide knew that there was, in fact, shingle damage.

26.     Nationwide's adjuster then used the Nederveld report to misrepresent to Plaintiff that there was no hail damage to the roof in its letter of January 5, 2018, wherein the Nationwide adjuster wrote:

> Our review showed that the asphalt roof shingles on the nine buildings involved in this loss did not sustain any hail damage. Therefore, we are unable to provide any payment for roof shingles. Enclosed, please find a copy of the Engineering report from Nederveld, Inc.

(*See* Exhibit 1, p. 1).

27.     However, under oath, Nationwide's adjuster knew that there was, in fact, hail damage and testified:

> Q. So under your estimate then, to building 7677, there were six damaged shingles in your test square, correct?
> A. In two test squares, I believe. (Exhibit 2, p. 120).

28.     Another Nationwide adjuster later testified that this practice was dishonest:

> Q.     Let me ask you this question: Let's assume that you find six hail hits on the building.
> A. Okay.
>
> Q.     Is it acceptable under that circumstance to write the policyholder and tell them that you didn't find any damage to the shingles?
> A. I actually don't - - if I'm there and they're there, I talk to them. I show them the pictures. If I deny a roof or – a letter does go out, correct, why I'm not.
>
> Q. Right. But would you - - if you found hail damage to the shingles on a roof, can we agree that it wouldn't be acceptable to either write or tell the policyholder that there weren't any damage to the shingles on the roof?
> A. I mean, the way you phrased that is you're asking if I'd be dishonest to the customer. That's the way I'm taking it.
>
> Q. Uh-hun
> A. The answer is no.
>
> Q. Okay. Does that sound dishonest?
> A. To tell someone who had hail damage that they didn't have hail damage? That's dishonest.

(Exhibit 3, p. 101-102).

29. The Nationwide adjuster only acknowledged the hail damage to this building because there was a prior repair on the building.

30. The Nationwide adjuster ignored open an obvious hail damage to the other buildings and used the Nederveld report to deceive Plaintiff as to the scope of the hail damage and the Policy coverages.

31. Nationwide has breached its duty of good faith and fair dealing by wrongly denying open and obvious covered hail damage, by making an unfounded refusal to pay policy proceeds, by deceiving Plaintiff as to the damage covered under the Policy, and by deceiving the Plaintiff as to the scope of damage sustained by the hailstorm.

32. Nationwide also breached its duty of good faith and fair dealing by unreasonably delaying the claim. Throughout the claim process Nationwide failed to promptly respond to communication from Plaintiff.

33. Nationwide never responded to the public adjuster's letter of October 11, 2017. (Exhibit 4).

34. The letter made several important requests including requesting a copy of the policy.

35. Nationwide never responded to the letter, and never provided a copy of the policy to the public adjuster.

36. Nationwide also never responded to the report by Sheilds Engineering Group, which was tendered by the policyholder on June 14, 2018, in good faith to continue to attempt to resolve the claim in accordance with Nationwide's request on January 5, 2018,

wherein Nationwide stated: "if you have information about this claim that may affect our current decision – please forward it to us as soon as possible." (Exhibit 1, 2018).

WHEREFORE, Plaintiff, North Shore Co-Owners' Association, Inc., prays for judgment against Defendant, Nationwide Mutual Insurance Company, in an amount which will fully, fairly and adequately compensates it for all damages recoverable under Indiana law for Nationwide Mutual Insurance Company's breach of its duty of good faith and fair dealing, for costs of this action, for punitive damages, and for all other just and proper relief in the premises.

## COUNT III: DECLARATORY JUDGMENT

37. Plaintiff reincorporates all prior allegations.

38. During the policy period, North Shore's covered property sustained hail damage, a covered loss, to all nine buildings.

39. Loss or damage to the buildings caused by hail is covered under the Policy. (Dkt. 42-1, p. 30-31).

40. The hail damaged shingles on all of the buildings.

41. The hail damaged soft metals on all of the buildings.

42. Because of the hail damage, the Policy provides coverage to replace all of the roofs on all of the buildings as itemized in Exhibit 5.

43. Because of the hail damage, the Policy provides coverage to replace the soft metals on all of the buildings as itemized in Exhibit 5.

44. The scope of the covered loss or damage caused by the hailstorm that should be covered under the Policy is itemized in Exhibit 5.

45. The replacement cost of the hail damage that should be covered under the Policy is $537,536.16. (Exhibit 5).

46. However, Nationwide denies the scope of the claimed damage.

47. Nationwide also denies that the replacement cost for the loss or damage caused by the hail damage is $537,536.16.

48. A present and existing controversy exists between Plaintiff and Defendant as to the scope of the covered loss or damage that should be covered under the Policy, and the amount that Nationwide should pay under the Policy for replacement cost benefits.

WHEREFORE Plaintiff, Huntington Heights Homeowners Association, Inc., prays for judgment declaring that:

49. The scope of the loss or damage caused by the hail damage that should be covered under the Policy is itemized in Exhibit 5.

50. The replacement cost for the hail damage that should be covered under the Policy is $537,536.16.

51. For all other just and proper relief in the premises.

## JURY DEMAND

Plaintiff demands trial by jury on all issues herein.

Respectfully submitted,


 /s/William D. Beyers
William D. Beyers, #28466-49
BUCHANAN & BRUGGENSCHMIDT, P.C.
80 E. Cedar St.
Zionsville, Indiana 46077
Telephone: (317) 873-8396
Facsimile: (317) 873-2276
bbeyers@bbinlaw.com

David Miller #31855-32
Saeed & Little, LLP
1433 N. Meridian St. Ste. 202
Indianapolis, IN 46149
317-721-9214
david@sllawfirm.com


Attorneys for Plaintiff

## **FEDERAL CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2019, a copy of the foregoing was filed electronically to all counsel of record. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access the filing through the Court's system.

/s/ William Beyers