UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| NORTH SHORE CO-OWNERS' ASSOCIATION, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:18-cv-03632-SEB-TAB |
| NATIONWIDE MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

**ORDER ON MOTIONS TO STRIKE,
LIMIT, OR EXCLUDE EXPERT WITNESSES**

**I.     Introduction**

This case has been plagued by multiple discovery disputes and other disagreements that seemingly have no end.  In the latest chapter, the disputes center around expert witness disclosures.  Before the Court are motions filed by both Defendant Nationwide Mutual Insurance Company [Filing Nos. 117 to 121] and Plaintiff North Shore Co-Owners' Association, Inc. [Filing No. 144] to strike, preclude, and/or limit the testimony of witnesses the other side has identified to provide opinion evidence as experts under Fed. R. Evid. 702.  For reasons stated below, Nationwide's motions to strike, preclude, or limit the testimony of Matthew Latham [Filing No. 120], Justin Reddick [Filing No. 119], Randal Adkins [Filing No. 117], and Jane Lampman [Filing No. 118] are granted in part.  Nationwide's motion to strike Martin Shields [Filing No. 121] is denied, as is North Shore's motion to strike Nationwide's witnesses [Filing No. 144].

II.    **Background**

This action began over two years ago, on November 20, 2018, when Nationwide removed North Shore's claims for breach of contract and bad faith from state court.  [Filing No. 1.]  The litigants seemingly agree that the heart of this case rests on a single question: did a hailstorm on May 19, 2017, damage the roofs of the buildings at North Shore's condominium property that is covered by Nationwide's policy?  [Filing No. 122, at ECF p. 1.]

Both parties filed notice of service of their initial disclosures on February 18, 2019. [Filing No. 25 and Filing No. 26.]  On April 8, 2019, North Shore provided Nationwide with its Amended Rule 26(a)(2) expert disclosures, which identified Latham, Reddick, Adkins, Lampman, and Shields as witnesses who will provide opinions under Rule of Evidence 701 or 702 as experts at trial in this matter.  [Filing No. 126-2.]  On April 29, 2019, Nationwide moved to strike North Shore's April 24 supplemental expert disclosure (and portions of an April 8 disclosure related to a witness not currently in dispute).  [Filing No. 33.]  The following day, the Court denied Nationwide's motion as it was apparent that Nationwide's counsel failed to review and follow this Court's local rules.  [Filing No. 34.]

In May 2019, following an unsuccessful settlement conference, the Court warned North Shore of the need to supplement its expert disclosures, stating:  "[Nationwide] asserted [North Shore]'s expert disclosures are insufficient.  The Court encourages, but does not at this stage require, [North Shore] to supplement its expert witness disclosures.  The Court is hopeful that this supplementation will avoid [Nationwide] filing a motion to strike [North Shore]'s experts." [Filing No. 39, at ECF p. 1.]  Despite this admonition, North Shore did not supplement its Rule 26 disclosures.

On July 31, 2020, Nationwide filed its pending motions to strike, preclude, and/or limit the testimony of Latham [Filing No. 120], Reddick [Filing No. 119], Adkins [Filing No. 117], Lampman [Filing No. 118], and Shields [Filing No. 121].  North Shore's response included a variety of exhibits, including a late disclosed affidavit of Latham [Filing No. 126-13], which led to more discord and a motion to strike Latham's affidavit [Filing No. 127].  On September 25, 2020, the Court issued an order decrying North Shore's tactics of filing late supplemental documents to "patch up shortfalls" regarding its witness disclosures, including Latham and Shields.  [Filing No. 132, at ECF p. 1-2.]  Nevertheless, the Court denied Nationwide's motion to strike and noted that the proper way for Nationwide to raise its concerns was to include the arguments in its reply brief in support of its original motion seeking to strike Latham's testimony. [Filing No. 132, at ECF p. 2.]

Unfortunately, the discord did not end there.  The same day that the Court entered its order, North Shore filed a motion to strike Nationwide's reply brief.  [Filing No. 133.]  This led to more time-consuming briefing and yet another Court ruling.[1]  On October 6, 2020, Nationwide filed its amended witness list.  [Filing No. 141.]  Subsequently, on October 27, 2020, North Shore filed its pending motion to strike Nationwide's amended witness list.  [Filing No. 144.]  North Shore claims that Nationwide filed a list of witnesses "for the first time" on October 6, 2020, after the close of discovery.  [Filing No. 144.]  In response, Nationwide labels North Shore's claim as "patently false[,]" claiming that the October 6 filing was a trial-ready amended witness list and that Nationwide made it clear to the Court and to the opposing party that its

---

[1] In October, amid all these motions, responses, and orders, North Shore filed its first motion for partial summary judgment.  [Filing No. 136.]  However, Nationwide filed a motion to stay the summary judgment motion pending resolution of the motions to strike [Filing No. 140], which the Court granted [Filing No. 146].

initial Rule 26 disclosures would serve as its initial witness list.  [Filing No. 147.]  In addition,

Nationwide argues that North Shore's motion is not timely, as the Court set a deadline requiring

any motion to strike experts to be filed by July 31, 2020.  [Filing No. 112.]  In response, North

Shore contends that Nationwide never identified its witnesses as Rule 702 experts until October

6, 2020.  [Filing No. 149.]

On November 17, 2020, the Court denied North Shore's motion to strike Nationwide's

reply brief to its motions to strike North Shore's witnesses and allowed North Shore to file a sur-

reply.  [Filing No. 148.]  Thus, at last, the motions to strike are fully briefed and ripe for

resolution.

## III.   Analysis

### A.   Legal Standards

#### i.   Rule 26 Expert Disclosure Requirement

Both Nationwide and North Shore maintain that various witnesses identified by the other

to provide expert testimony should be limited or excluded from providing such testimony

because of improper disclosures under Fed. R. Civ. P. 26.  Rule 26(a)(2) governs the disclosure

of expert testimony:

> (A) *In general*.  In addition to the disclosures required by Rule 26(a)(1), a party
> must disclose to the other parties the identity of any witness it may use at trial to
> present evidence under Federal Rule of Evidence 702, 703, or 705.

> (B) *Witnesses Who Must Provide a Written Report*.  Unless otherwise stipulated
> or ordered by the court, this disclosure must be accompanied by a written report—
> prepared and signed by the witness—if the witness is one retained or specially
> employed to provide expert testimony in the case or one whose duties as the
> party's employee regularly involve giving expert testimony. . . .

> (C) *Witnesses Who Do Not Provide a Written Report*.  Unless otherwise stipulated
> or ordered by the court, if the witness is not required to provide a written report,
> this disclosure must state:

> (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
> (ii) a summary of the facts and opinions to which the witness is expected to testify.

Fed. R. Civ. P. 26(a)(2).

### ii.    Federal Rule of Evidence 702

In addition, both Nationwide and North Shore maintain that several purported expert witnesses should be excluded for falling short of the admissibility standard of Fed. R. Evid. 702. Rule 702 sets forth the general framework for the admissibility of expert testimony, and provides that a witness who is qualified as an expert based on knowledge, skill, experience, training, or education may provide opinion testimony so long as:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The Supreme Court interpreted Rule 702 in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 125 L. Ed. 2d 469, 113 S. Ct. 2786, 2795 (1993), to mandate that the district court "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."

> In performing its gatekeeper role under Rule 702 and *Daubert*, the district court must engage in a three-step analysis before admitting expert testimony. It must determine whether the witness is qualified; whether the expert's methodology is scientifically reliable; and whether the testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue.  In other words, the district court must evaluate: (1) the proffered expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony.

*Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017) (internal citations and quotation marks omitted).  *See also Kopplin v. Wisconsin Cent. Ltd.*, 914 F.3d 1099, 1103-04

(7th Cir. 2019) ("The ultimate question is whether the expert's approach is scientifically valid, which requires a careful examination of its evidentiary relevance and reliability. The focus is on the expert's methodology, not his ultimate conclusions." (Internal citation and quotation marks omitted)).

### B.   Nationwide's motions to strike North Shore's proposed expert witnesses

Nationwide challenges five of North Shore's proffered expert witnesses: Matthew Latham, Justin Reddick, Randal Adkins, Jane Lampman, and Martin Shields. Nationwide argues they should be excluded because North Shore failed to comply with the disclosure requirements of Fed. R. Civ. P. 26(a)(2) and because each purported expert fails to meet the admissibility standard of Rule 702. [Filing No. 122, at ECF p. 2.]

The Court addresses specific arguments on admissibility as to each witness below, yet some commonalities apply to the analysis of North Shore's expert disclosures. Generally speaking, North Shore's disclosures are problematic. As noted above, Rule 26(a)(2)(C) requires disclosure of (1) the subject matter about which the witness will testify as an expert; and (2) a summary of the facts and opinions to which the witness is expected to testify. While North Shore minimally provided this information, the disclosures repeatedly contain vague, broad language that falls short of Rule 26's standard. For instance, North Shore identified Latham as a public adjuster, but used nearly identical generic language to describe what his opinion testimony would entail as it used for some of the other witnesses at issue, including general contractors Adkins and Reddick. [Filing No. 126-2, at ECF p. 1 ("The subject matter of his testimony would comprise of shingle damage, cosmetic shingle damage, matching the shingles, the composition of shingles, hail damage identification, wind damage identification, and wind damage.").]

North Shore had opportunities to mend deficiencies in its disclosures. The Court recognized deficiencies in North Shore's disclosures back in May 2019, and encouraged North Shore to supplement its expert witness disclosures. [Filing No. 39.] North Shore failed to do so. In regard to Latham, Adkins, and Reddick, North Shore largely failed to provide Nationwide with a useful description of the subject matter on which the witness is expected to present evidence under Rule 702 and/or a summary of the facts and opinions to which that witness is expected to testify. *See* Fed. R. Civ. P. 26(a)(2)(C)(i)-(ii). Thus, North Shore failed to make proper disclosures under Rule 26(a)(2).

The sanction for failing to follow Rule 26(a)(2) is exclusion. *See* Fed. R. Civ. P. 37(c)(1). However, this sanction is not automatic; instead, the Court must determine whether the failure to properly disclose is harmless or justified under Fed. R. Civ. P. 37(c)(1). *See, e.g., Tribble v. Evangelides*, 670 F.3d 753, 759-60 (7th Cir. 2012) ("Without proper disclosures, a party may miss its opportunity to disqualify the expert, retain rebuttal experts, or hold depositions for an expert not required to provide a report. Because of these and other ways a party may be prejudiced by an improperly disclosed expert, the sanction is severe. Under Rule 37(c)(1), exclusion of non-disclosed evidence is automatic and mandatory unless non-disclosure was justified or harmless." (Internal citations, quotation marks, and ellipses omitted)). Such decision is left to the discretion of the district court. *See, e.g., Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 417 (7th Cir. 2019) ("Rule 37(c)(1) states that if a party fails to comply with Rule 26(a), the evidence is excluded unless the failure was substantially justified or is harmless—and the district court thought Spigen's failures were harmless. We review that decision for an abuse of discretion and affirm as long as it was reasonable. The following factors. . . should guide district courts in making Rule 37 determinations: (1) the prejudice or surprise to the party against

whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date."  (Internal citations and quotation marks omitted)).

The harmful impact of the disclosures' deficiencies was mitigated, in part, because North Shore identified these witnesses early in litigation, and Nationwide had the opportunity to depose all of them.  Thus, the prejudice and surprise to Nationwide is minimal.  Moreover, while the disclosures lack the level of detail needed under Fed. R. Civ. P. 26(a)(2), this is not a case of complete non-disclosure.  North Shore at least minimally attempted to disclose these witnesses, and there is no evidence of bad faith.  Thus, the Court declines to exclude these witnesses based on shortcomings with North Shore's disclosures alone.  However, the Court further scrutinizes each of the purported expert witnesses and their proposed testimony, individually, for admissibility under Fed. R. Evid. 702.

> <i>i.    Matthew Latham</i>

Nationwide argues that North Shore "failed to identify Latham's qualifications that would establish him as an expert witness and failed to disclose a summary of Latham's proposed opinions with supporting facts as required under Rule 26." [Filing No. 122, at ECF p. 6-7.] Following the standard noted above, the Court will evaluate the following: (1) Latham's qualifications to testify as an expert; (2) the reliability of his methodology; and (3) the relevance of his testimony.  *See Gopalratnam*, 877 F.3ed at 779.

In relation to Latham's qualifications, Nationwide argues that Latham is not qualified by education or experience to testify as a Rule 702 expert.  [Filing No. 122, at ECF p. 7.]   North Shore initially provided little information on Latham's skill, experience, or knowledge.  While North Shore's response to Nationwide's motion included an affidavit containing further

information on Latham's qualifications, Nationwide rightly raises many concerns regarding the late-disclosed affidavit. [Filing No. 131, at ECF p. 9-10.] The Court already acknowledged the validity of those concerns when addressing the dispute over how Nationwide should raise them, concluding that Nationwide's reply brief was the appropriate method. [Filing No. 148.] In past litigation, the Court granted a request to exclude this same expert where the plaintiffs failed to highlight his qualifications that would allow him to testify as an expert. *Cf. Rocklane Company LLC v. Travels Casualty Ins. Co.*, No. 1:17-cv-02158-JMS-DLP, 2020 WL 1320963, at *9 (S.D. Ind. Jan. 21, 2020) (granting the defendant's request to exclude Latham as an expert under Rule 702 because the plaintiffs failed to highlight any of Latham's academic or practical experience that would qualify him as an expert under *Daubert*.). In comparison, here North Shore provided a bit more detail, and Latham testified at his deposition regarding his qualifications as a licensed public adjuster to interpret policy language and adjust claims for policyholders. [Filing No. 122-3, at ECF p. 35, 43.]

Still, even assuming he may be qualified to offer an expert opinion, Latham's testimony did not include opinions of science or industry methodology. Rather, as Nationwide articulated, Latham's opinions are largely limited to his factual observations, and he provided no scientific or technical foundation for his estimate that an entire roof replacement was needed. [Filing No. 122, at ECF p. 10.] Moreover, many of Latham's opinions are rooted in his interpretation of the underlying insurance policy, in addition to his visual observations. [Filing No. 122, at ECF p. 11.]

North Shore complains that Nationwide "asked confusing questions in an attempt to muddy the record and his foundation for estimating and determining that roofs needed to be replaced." [Filing No. 126, at ECF p. 9.] North Shore argues that Latham's opinions are based

on his training, skill, and experience as a public adjuster and maintains that it is not very difficult to adjust hail damage claims and identify hail damage; rather, it is mostly based on experience. Even if this were the case, North Shore nevertheless provided scant basis for the Court to evaluate Latham as an expert.  Lacking any reliable methodology for his opinions or scientific or technical foundation, the Court cannot find Latham qualified to testify as an expert in this matter. Latham inspected North Shore's property during May or June 2017, but admitted that he took no notes or pictures on that day and generated no report or estimate.  [Filing No. 122, at ECF p. 9.] He later provided for an estimate calling for an entire roof replacement on all nine of the subject roofs, yet provided no scientific or technical foundation for having such an opinion.  Rather, his opinion rests precariously on his interpretation of the insurance policy.  [Filing No. 122-3, at ECF p. 36.]  These shortcomings do not provide the Court with a sufficient basis to properly evaluate Latham's opinions.

Alternatively, North Shore argues that Latham should be permitted to offer an opinion on the cost to replace the shingles and soft metals.  [Filing No. 126, at ECF p. 19.]  The Court agrees that this testimony is permissible.  Latham, a public adjuster, provided an investigative report and an itemized estimate. [Filing No. 126-15.]  This subject is relevant to the underlying litigation.  While Nationwide generally raises issues with Latham's qualifications to provide expert testimony under Rule 702, Nationwide makes no specific arguments regarding Latham's ability to opine on replacement cost or the software he used to estimate the replacement cost of for the roofs and soft metals.  Thus, Latham is qualified to offer an opinion as an expert under

Rule 702 on the topic of replacement cost for shingles and soft metals.  However, the remainder of Latham's testimony is otherwise limited to matters within his personal knowledge.[2]

      *ii.    Justin Reddick*

Nationwide next argues that North Shore's roofing contractor, Justin Reddick, is not qualified to offer any expert opinions.  [Filing No. 122, at ECF p. 12.]  As noted above, many of the same concerns regarding North Shore's disclosure of Latham also apply to Reddick.  North Shore used similar boilerplate disclosure language and failed to identify Reddick's area of expertise.  [Filing No. 126-2, at ECF p. 2.]  However, Nationwide deposed him for over seven hours.  [Filing No. 126, at ECF p. 20.]  In addition, North Shore's disclosure does provide some specific detail on the opinions that Reddick may offer, including testimony based on his observations that the property was damaged by hail and wind and needed to be replaced and that the shingles were discontinued, so repair would leave the owners with mismatched shingles.  [Filing No. 126-2, at ECF p. 2.]  Thus, the Court declines to exclude Reddick based on non-compliance with Rule 26.

Yet several concerns remain on Reddick's admissibility as an expert witness under Rule 702.  Reddick has no technical background or experience in engineering or roofing.  While Reddick has experience as a general contractor and has been around building and construction for a long time, his resume did not include any courses on engineering or certification in roofing.

---

[2] Nationwide also argues that Latham should be barred from testifying because of his bias and financial stake in the outcome of this litigation.  [Filing No. 122, at ECF p. 11.]  However, bias or financial incentive alone is not enough to disqualify a witness.  *See, e.g., Rocklane*, No. 1:17-cv-02158-JMP-DLP, 2020 WL 1320963, at *5 ("Bias alone is not enough to disqualify an expert. The proposed testimony must be found unreliable utilizing the *Daubert* framework."  (Internal citations omitted)); *Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1042 (7th Cir. 1988) ("The trier of fact should be able to discount for so obvious a conflict of interest.").  This issue is better reserved for cross-examination.

[Filing No. 122-4, at ECF p. 123.]  And while he apparently worked for Rocklane Company, LLC as a general contractor for over seven years, this experience is not reflected on the version of his resume attached to his deposition.  [Filing No. 122-4, at ECF p. 19-21; 123.]  Furthermore, as Nationwide states, "[m]ere experience as a roofer does not qualify a witness to testify as to the cause of alleged damage to the roof."  [Filing No. 131, at ECF p. 13.]

In addition, Reddick was unable to explain the scientific principles or professional methodology he used to determine whether hail damage occurred to shingles on North Shore's roofs.  Reddick generally claimed to have expertise on the matter of hail damage during his deposition, described what he saw at North Shore, and provided some general knowledge on how he identifies hail damage.  [Filing No. 122-4, at ECF p. 42-44.]  At Reddick's deposition, counsel had a very contentious discussion surrounding Reddick's credentials.  [Filing No. 122-4, at ECF p. 45.]  During that heated debate, North Shore referred to Reddick as a fact witness and instructed him not to answer a question because "he's not here to testify as an expert per [Nationwide's] instruction."  [Filing No. 122-4, at ECF p. 45.]

For these reasons, Reddick may only testify as to what he observed.  Reddick is not qualified to testify as a Rule 702 expert on hail damage.  Accordingly, Nationwide's motion to strike, limit, or exclude Reddick's Rule 702 testimony is granted.

### iii.    Randal Adkins

The analysis of Adkins, in some ways, mirrors that of Reddick.  Adkins, another one of North Shore's roofing contractors, only inspected two of the nine roofs in question.  During Nationwide's deposition of Adkins, he stated that the only opinion he could provide was that there was hail damage at North Shore, based on his viewing two of the nine roofs in question. [Filing No. 122-5, at ECF p. 15.]  Yet North Shore wishes to present Adkins at trial as an expert

on identifying hail damage.  In doing so, North Shore once again used mostly boilerplate

disclosure language.  [Filing No. 126-2, at ECF p. 2-3 ("[D]ue to his skill, experience and

knowledge concerning shingle damage from hail and wind as well as GAF shingles and the

inability of these shingles to be matched, Mr. Adkins will provide opinions under Rule of

Evidence 701 or 702 as an expert at trial in this matter.  The subject matter of his testimony

would comprise of shingle damage, cosmetic shingle damage, matching the shingles, the

composition of shingles, hail damage identification, wind damage identification, wind damage,

and training he has provided on these topics.").  However, as with Reddick, Nationwide had the

opportunity to depose Adkins, so any prejudice is minimized, and there is no evidence of bad

faith on North Shore's part in providing the deficient disclosure statement.  Thus, the Court

declines to exclude Reddick based on non-compliance with Rule 26.

Nevertheless, the Court has similar concerns regarding the admissibility of Adkins's

opinion testimony under Rule 702 as noted above for Reddick.  Regarding his qualifications,

Adkins has worked as a roofer and contractor for over 30 years but has no credentials specific to

identifying hail damage.  [Filing No. 122-5, at ECF p. 7.]  He testified that his only opinion in

this case is that there is hail damage on the roofs at North Shore.  [Filing No. 122-5, at ECF p. 9.]

The bigger issue with Adkins's reliability, however, is lack of reliable methodology or principles

behind his opinions.

Adkins did not testify regarding any scientific or professional methodology he used to

reach his conclusion, nor did North Shore's disclosure identify any.  North Shore claims that

Adkins "employed a proper and standard methodology for determining whether the buildings'

shingles sustained hail damage."  [Filing No. 126, at ECF p. 25.]  However, at his deposition,

when asked how he determines if there is hail impact on a roof, he replied: "[b]y inspecting the

roof." [Filing No. 122-5, at ECF p. 24.]  At the same time, though, he confirmed that he only inspected two roofs.  [Filing No. 122-5, at ECF p. 15.]  When directly asked if all nine roofs were damaged by hail, he stated: "I cannot say on the seven I didn't get on." [Filing No. 122-5, at ECF p. 15.]  He eventually claimed, based on his observations, that he observed collateral damage on other buildings that led him to believe they were damaged by hail.  [Filing No. 122-5, at ECF p. 35.]  To allow Adkins to testify as an expert opinion that all nine roofs were subject to hail damage would amount to nothing more than speculation on the seven roofs that he did not inspect.

While experts can testify as to things they did not inspect, it would be quite a stretch to call Adkins's conclusion, simply conflating what he observed on two roofs to an opinion as to all nine, an "expert" opinion.  Moreover, Adkins's comments about the lack of a reasonable shingle match amount to factual recitations, which do not require expert testimony.  *See, e.g., Rocklane, No. 1:17-cv-02158-JMP-DLP, 2020 WL 1320963*, at *7 ("In reviewing the summary of facts and opinions section of Adkins' written report regarding matching shingles, the Court finds that it contains factual recitations for which expert testimony is not necessary.").  Therefore, Nationwide's motion to exclude Adkins from testifying as an expert witness under Rule 702 and strike his conclusive statement that there is hail damage at North Shore is granted.  Adkins's testimony is limited to observations and personal knowledge as a lay witness under Rule 701[3] of the Federal Rules of Evidence.  He may testify as to what he observed on the two roofs he inspected, but he lacks the necessary qualifications in this litigation to provide expert testimony

---

[3] North Shore disclosed all the witnesses at issue as both Rule 702 experts and as having opinions under Rule 701.  [Filing No. 126-2.]  None of Nationwide's arguments address whether the experts are qualified to offer opinions under Rule 701, so this question is not before the Court at this time.

on any other relevant matter, including hail damage.[4]  Thus, as with Reddick, Adkins's testimony is limited to personal his knowledge only.

    *iv.*    *Jane Lampman*

North Shore identified Jane Lampman, a representative of GAF Materials Corporation, to offer expert testimony regarding the repairability of the shingles at North Shore because the shingles were discontinued and could not be reasonably matched with a replacement product. [Filing No. 126-2, at ECF p. 2.]  Nationwide argues that North Shore "has failed to establish the requirements for admissibility under Rule 702" as it relates to Lampman's purported testimony. [Filing No. 122, at ECF p. 17.]  Nationwide notes that Lampman testified that she never visited North Shore and has no personal knowledge regarding the damage at issue or North Shore's roof shingles.  [Filing No. 122, at ECF p. 16.]  Lampman testified that she could not offer any scientific or technical opinions in this case.  [Filing No. 122-6, at ECF p. 8.]

North Shore argues that Lampman is "qualified to provide expert testimony that the shingles at North Shore were discontinued and that existing shingles cannot provide a reasonable match."  [Filing No. 126, at ECF p. 28.]  However, Lampman did not visit North Shore to view the shingles at issue and has never been on the site.  While North Shore claims that the existing shingle type is not in dispute, this still does not qualify Lampman to testify as a Rule 702 expert at trial regarding the appropriateness of a reasonable shingle match.  North Shore has not presented any methodology or principles behind her testimony, beyond generally referring to the fact that she works for a company that manufactures shingles.  She may testify as to her knowledge and experience, as a GAF employee, on whether a particular type of shingle has been

---

[4] It is not possible at this stage to conclusively detail the full scope of Adkins's potential testimony, but it is clear he is not an expert under Rule 702.

discontinued and whether she is aware of any shingle that would be appropriate to replace it. However, Lampman is not qualified to testify on anything more than those facts. Thus, for these reasons, Nationwide's motion to limit Lampman's testimony is granted.[5]

    *v.*  *Martin Shields*

Finally, Nationwide argues that Shields should be barred from testifying regarding the application of the Indiana Building Code or an insurer's legal obligation to provide matching roofs under Indiana law. [Filing No. 122, at ECF p. 17.]

North Shore provided a supplement report in May 2020 [Filing No. 122-7, at ECF p. 42-52], and now claims that Shields is a specifically retained expert for the limited purpose of identifying when the shingles were installed at North Shore [Filing No. 122-2, at ECF p. 2]. Shields's opinion is that the shingles were installed in 2007, based on his review of satellite images and his impression of the color seen in those images. However, Shields admitted that a lay person could see the same thing. [Filing No. 122-7, at ECF p. 19.]

In response, North Shore maintains that Nationwide's motion makes no specific reference to Shields's supposedly inadmissible testimony. [Filing No. 126, at ECF p. 30.] North Shore argues that Nationwide's arguments are not developed enough and thus waived. [Filing No. 126, at ECF p. 30-31.] In addition, North Shore contends that the opinion that this shingle style was discontinued is not in dispute. [Filing No. 126, at ECF p. 31.] Finally, North Shore argues that

---

[5] It should be noted that pretrial rulings are preliminary in nature. *See, e.g., Eversole v. H & J Trucking, Inc.,* No. 3:09-cv-007-RLY-WGH, 2010 WL 9589559, at * 3 (S.D. Ind. June 4, 2010) ("The rulings with respect to these motions [to exclude expert testimony and in limine] are preliminary in nature and are subject to change depending upon the evidence and argument presented at trial."). Whether developments at trial prompt the trial judge to revisit any rulings in this order is an issue for another day.

Shields's conclusions are the product of specialized knowledge or expertise based on his extensive engineering and construction experience.  [Filling No. 126, at ECF p. 32.]

Nationwide's motion does not dispute Shields's qualifications to identify hail damage and provide an opinion that North Shore's roofs should be replaced.  He appears well-qualified to offer such opinions.  However, in relation to the two specific issues Nationwide raises in its motion to strike, Nationwide provides inaccurate citations to the record.  Nationwide cited to and attached Shields's deposition at Filing No. 122-7, but then the deposition discussed in the body of Nationwide's motion is a completely different deposition, at Filing No. 97-1.  Filing No. 122-7 does not contain the statements referenced or go to the page numbers the citation claims.  The deposition of Shields that does, Filing No. 97-1, was not filed in support of Nationwide's motion to strike.  Furthermore, the remaining arguments in this section of Nationwide's motion contain no specific references to Shields's testimony, so there is not enough information for the Court to properly evaluate the alleged issues.  Thus, Nationwide's motion to strike Shields is denied.

### C.    North Shore's motion to strike certain defense witnesses

North Shore moved to strike[6] Nationwide's proposed witnesses Joshua Trei, Drew Knostman[7], David Weaver, John Holland, and Michael Wildason from offering opinions under Rule 702 because North Shore claims Nationwide provided untimely and incomplete disclosures under Fed. R. Civ. P. 26(a)(2).  [Filing No. 144.]  Unlike Nationwide's motions, the bulk of

---

[6] Nationwide argues that North Shore's motion is untimely and violates S.D. Ind. L.R. 37-1 because North Shore did not attempt to resolve this dispute with Nationwide before filing the instant motion.  [Filing No. 147, at ECF p. 3.]  While the Court ultimately addresses the underlying motion, it agrees that North Shore's motion is yet another example of how this matter has become needlessly complicated.

[7] Nationwide identified this witness as "Drew Knostman" in its initial disclosure [Filing No. 147-2] and amended expert disclosure [Filing No. 141], but in the parties' briefs his last name is spelled "Knutzman" [Filing No. 144; Filing No. 147; Filing No. 149] or "Kotsman" [Filing No. 144, at ECF p. 2].  This is yet another example of sloppy editing by both sides.  For consistency and ease of reference, the Court uses the spelling in the disclosures, "Knostman."

North Shore's arguments relate to alleged shortcomings with Nationwide's disclosure under Fed. R. Civ. P. 26(a)(2), rather than admissibility concerns under Rule 702. Instead, North Shore focuses on general arguments of untimeliness and insufficiency with the disclosure.

For instance, North Shore contends that on October 6, 2020, Nationwide, for the first time, identified Trei, Knostman, Weaver, Holland, and Wildason as having expert opinions under Rule 702. [Filing No. 144, at ECF p. 1-3.] However, Nationwide disclosed all these individuals, except Holland, in its initial discovery disclosures in February 2019. [Filing No. 43; Filing No. 147-2.] As reflected in the adopted Case Management Plan, Nationwide clearly stated that its initial disclosures would serve as its initial witness list during the initial pretrial conference. [Filing No. 43.] While Nationwide did not explicitly state that these witnesses would offer opinions under Rule 702, Nationwide's initial disclosure provided background information on Trei, Knostman, Weaver, and Wildsaon and a preview of what Nationwide anticipated they would be called to testify about at trial. [Filing No. 147-2.] For instance, with Trei, Nationwide's initial disclosure stated:

> Mr. Trei will testify as to those facts and opinions contained in his report produced at bates range NATIONWIDE001010 – NATIONWIDE001057 as well as any supplemental reports he contributed to and/or authored. He will be called to testify and render opinions concerning his investigation into Plaintiff's properly loss claim, including the nature of the occurrence; the alleged damage to the property caused by the hail/wind storm; and the scope/extent of any repairs/replacement needed to remedy any observed damage caused by the hail/wind storm. Mr. Trei will testify as to any observations made during his inspection of the property, as well as any statements made by the parties or witnesses following the occurrence and/or during the inspection. Mr. Trei will further testify regarding his review and analysis of any reports drafted by Plaintiff's public adjuster. Nationwide reserves the right to amend and supplement this disclosure.

[Filing No. 147-2, at ECF p 3.] Nationwide provided similarly detailed disclosures as to Wildason, Knostman, and Weaver.[8] [Filing No. 147-2.]

As for Holland, he sat for two depositions as a corporate representative when North Shore requested a Rule 30(b)(6) deposition. [Filing No. 144, at ECF p. 3.] Nationwide argues that North Shore "cannot complain about Holland's opinions not being disclosed when [North Shore] solicited those same opinions." [Filing No. 147, at ECF p. 5.] Nationwide's amended disclosure states: "Mr. Holland has not been specifically retained as a testifying litigation expert. However, due to his skill, experience, and knowledge, Mr. Wildason [sic?'][9] will provide opinions under Rule of Evidence 701 or 702 as an expert at trial in this matter consistent with those in his deposition." [Filing No. 141, at ECF p. 4.] While there are certainly clerical errors in Nationwide's disclosure of Holland, these errors are less severe than those noted above regarding Weaver. Furthermore, any prejudice is minimal since North Shore had the opportunity

---

[8] However, the Court does have concerns with Weaver's disclosure. In its initial disclosure, Nationwide stated that Weaver would testify as to facts and opinions contained in the same report as Trei and Knostman. [Filing No. 147-2, at ECF p. 2-3.] But in both the initial and updated disclosure, Nationwide referenced both Weaver and Trei with what appears to be possibly a scribing error from cutting and pasting Trei's disclosure, stating "Mr. Trei will testify…" in the section disclosing Weaver. [Filing No. 141, at ECF p. 2.] North Shore contends that "[f]rom the disclosure it appears that Mr. Weaver intends on providing Rule 702 opinions based upon Mr. Trei's observations, rather than his own. . . . Further, Mr. Trei testified that Mr. Weaver never went to the site and simply reviewed and signed the report." [Filing No. 144, at ECF p. 2.] North Shore chose not to depose Weaver. And the extent of his participation in drafting the report is not before the Court. Still, the Court agrees that Nationwide's disclosure is confusing, error-ridden, and lacking in proper detail. To the extent that Nationwide claims Weaver will testify as to facts and opinions contained in Trei's report, but that he did not contribute, this is problematic. However, given that North Shore does not state any specific substantive concerns about Weaver's proposed testimony, the Court does not address this issue further at this point.

[9] This is yet another example of poor editing and drafting, resulting in a needlessly confusing disclosure statement.

to depose this witness twice.  Holland provided testimony specifically requested by North

Shore's Rule 30(b)(6) notice.

Thus, even assuming Nationwide's disclosures were late or incomplete, such failures may

be excused if they were harmless.  *See, e.g., King v. Ford Motor Co.*, 872 F.3d 833, 838 (7th Cir.

2017) ("Rule 26(a) requires a party to disclose the name of each individual likely to have

discoverable information—along with the subjects of that information—that the disclosing party

may use to support its claims or defenses[.]  If a party fails to do so, it is not allowed to use that

witness to supply evidence on a motion, unless the failure was substantially justified or is

harmless.  The determination of whether a Rule 26(a) violation is justified or harmless is

entrusted to the broad discretion of the district court."  (Internal citations, quotation marks, and

ellipses omitted)); *United States v. Z Investment Properties, LLC*, 921 F.3d 696, 698-99 (7th Cir.

2019) ("Rule 37 articulates the sanction for failing to comply with the above discovery

disclosure requirements").  As noted above in analyzing North Shore's disclosures, "[t]he

following factors. . . should guide district courts in making Rule 37 determinations: (1) the

prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the

party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or

willfulness involved in not disclosing the evidence at an earlier date." *Uncommon, LLC v.*

*Spigen, Inc.*, 926 F.3d 409, 417 (7th Cir. 2019) (internal citations and quotation marks omitted)).

All factors weigh in Nationwide's favor.

Nationwide aptly notes that North Shore never raised any concerns about its February

2019 Rule 26 disclosures prior to October 2020.  North Shore makes no credible argument for

prejudice or surprise by the disclosure.  As noted above, Nationwide identified the witnesses at

issue in its initial Rule 26 disclosures in February 2019, and made it clear at the initial pretrial

conference that those disclosures would serve as its initial witness list.  [Filing No. 43.]  North Shore deposed Trei, Holland, and Wildason.  Emails from February 2019 indicate that North Shore's counsel was aware Trei, for instance, would offer Rule 702 opinions and North Shore sought to depose him on the issue of whether the shingles were damaged by hail.  [Filing No. 147-1.]  While North Shore points out that Knostman and Weaver were not deposed, this tactical decision was of North Shore's own doing.  [Filing No. 144, at ECF p. 2.]  North Shore knew that Nationwide had disclosed these witnesses and chose not to depose them.  Finally, North Shore accuses Nationwide of bad faith and claims that Nationwide "blatantly delayed its expert disclosures until after the close of discovery in order to avoid scrutiny of its compliance with Federal Rule of Civil Procedure 26(a)(2)(B) and (C)."  [Filing No. 149, at ECF p. 1, 7.]  North Shore has provided no support for this accusation.

Finally, North Shore raises no specific issues with the admissibility of any of these experts' opinions under Rule 702, so any such argument is waived.  *See, e.g., Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped legal arguments are waived[.]").  Accordingly, North Shore's motion [Filing No. 144] is denied.

**IV.**   **Conclusion**

North Shore and Nationwide have raised some legitimate concerns with the disclosures and proposed testimony of each other's witnesses.  However, many of these problems were avoidable, or could have been resolved in a more simplified manner if counsel had focused on communicating about these issues rather than using them as a vehicle to exacerbate this litigation.

Nevertheless, for reasons conveyed above, the Court issues the following rulings:

1)   Nationwide's motion to strike Latham [Filing No. 120] is granted in part.  Latham may testify as a Rule 702 expert regarding the replacement cost of shingles and soft metals, but the remainder of his testimony is limited to his personal knowledge.

2)   Nationwide's motion to strike Reddick [Filing No. 119] is granted in part. Reddick's testimony is limited to his observations and personal knowledge.

3)   Nationwide's motion to strike Adkins [Filing No. 117] is granted in part.  Adkins's testimony is limited to personal knowledge and his observations of the two roofs he inspected.

4)   Nationwide's motion to strike Lampman [Filing No. 118] is granted in part. Lampman's testimony is limited to her knowledge and experience, as a GAF employee, regarding whether a particular type of shingle has been discontinued and whether she is aware of any shingle that would be appropriate to replace it.

5)   Nationwide's motion to strike Shields [Filing No. 121] is denied.  Shields is qualified to identify hail damage and provide an opinion on whether North Shore's roofs should be replaced.  Nationwide's remaining arguments regarding Shields are unpersuasive due to obvious errors in Nationwide's brief.

6)      North Shore's motion [Filing No. 144] to strike Nationwide's witnesses Trei,

Knostman, Weaver, Holland, and Wildason is denied.  Any errors with Nationwide's disclosures

were harmless, though the Court has noted specific concerns regarding Weaver.


Date: 2/12/2021


Tim A. Baker
United States Magistrate Judge
Southern District of Indiana


Distribution:

All ECF-registered counsel of record via email